UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
IRB-BRASIL RESSEGUROS S.A.,

                 Petitioner,

     - against -

NATIONAL INDEMNITY COMPANY,

               Respondent.
---------------------------------------X

**M E M O R A N D U M
A N D
O R D E R**

11 Civ. 1965 (NRB)

**NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE**

       This is the latest chapter in an ongoing arbitration dispute between IRB-Brasil Resseguros S.A. ("IRB") and National Indemnity Company ("NICO"). Despite this Court's October 5, 2011 Memorandum and Order denying petitions from both parties, the parties have been unable to progress and have again filed cross-petitions requesting various forms of relief from this Court. For the reasons discussed below, both petitions are granted in part and denied in part.

<u>**BACKGROUND**</u>[1]

       On December 31, 2008, NICO commenced two arbitrations against IRB, one in London, England ("Arbitration 1") and the other in New York City ("Arbitration 2"). (IRB Pet. ¶ 12.) These

---

[1] This background is derived from the Amended Petition of IRB-Brasil Resseguros S.A. to Compel Arbitration in Compliance with the Arbitration Agreement and for Further Relief ("IRB Pet."), filed October 28, 2011, the Declaration of Aidan M. McCormack ("McCormack Decl."), filed November 8, 2011, the exhibits annexed thereto, and previous docket entries in this case.

arbitrations concerned two reinsurance policies issued by NICO to IRB, for which nearly $250 million in coverage obligations are now in dispute. (Id.) The arbitration clause in both reinsurance policies provides for the following procedure to select arbitrators:

> If any dispute shall arise among the Reinsured and the Reinsurer with reference to the interpretation of this Insurance or rights with respect to any transaction involved, whether such dispute arises before or after termination of this Insurance, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by either party, and the third by the two so chosen. If either party refuses, or neglects to appoint an arbitrator within 30 days after receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators. If the two arbitrators fail to agree in the selection of a third arbitrator within 30 days of their appointment, each of them shall name two, of whom the other shall decline one and the decision shall be made by drawing lots. All arbitrators shall be active or retired officers of insurance or reinsurance companies not under the control of either party to this Certificate.

(Id. ¶ 19.) The parties selected arbitrators in Arbitration 1 according to the above procedure. (Docket no. 1 ¶ 21.) On November 16, 2010, the panel in Arbitration 1 determined that it lacked jurisdiction and dismissed the arbitration. (Id. ¶ 28.) That same day, NICO commenced a third arbitration against IRB in

New York City ("Arbitration 3"), under the same reinsurance policy as that underlying Arbitration 1. (Id. ¶ 34.)

Before the panel in Arbitration 1 issued its decision, IRB and NICO had begun the process of selecting the panel for Arbitration 2. On January 30, 2009, IRB appointed James White as its party-appointed arbitrator for Arbitration 2, and on June 22, 2009, NICO appointed James Dowd as its party-appointed arbitrator. (IRB Pet. ¶ 20.) On September 15, 2009, each party nominated two candidates for the neutral third arbitrator ("umpire") position. (Id. ¶ 21.) Specifically, IRB nominated William Trutt and Jonathan Rosen, and NICO nominated Caleb Fowler and Dan Schmidt. (Id.) A short time thereafter, both parties agreed to postpone selection of the umpire in Arbitration 2 so that they could conduct confidential, without-prejudice settlement discussions. (Id. ¶ 22.) These discussions concluded in December 2009 without an agreed-upon settlement, and no umpire was ever selected in Arbitration 2. (Id.)

On December 16, 2010, IRB appointed James White as its arbitrator in Arbitration 3. (Id. ¶ 24.) On March 1, 2011, NICO appointed Jonathan Rosen as its arbitrator in Arbitration 3. (Id. ¶¶ 25-26.) IRB objected to NICO's appointment of Rosen because IRB had previously nominated Rosen as an umpire candidate for Arbitration 2. On March 21, 2011, IRB filed a

3

petition in this Court to disqualify Rosen from serving in Arbitration 3 and to compel consolidation of Arbitrations 2 and 3. (Docket no. 1.) NICO filed a cross-petition seeking court-appointment of an umpire for Arbitration 3. (Docket no. 7.)

In an October 5, 2011 Memorandum and Order, this Court denied both petitions. See IRB-Brasil Resseguros S.A. v. Nat'l Indem. Co., No. 11 Civ. 1965 (NRB), 2011 WL 4686517 (S.D.N.Y. Oct. 6, 2011). Finding little authority to support IRB's request, we declined to disqualify Rosen as NICO's party-appointed arbitrator in Arbitration 3. See id. at *2-3. However, in so doing, we suggested that because NICO had chosen Rosen as its arbitrator in Arbitration 3, NICO could be considered to have exercised its option to strike Rosen as one of IRB's umpire candidates in Arbitration 2 - leaving William Trutt as IRB's remaining nominee for the umpire position. See id. at *3. We added that "[w]e [saw] no further barrier to the parties concluding the relatively straightforward process of selecting the arbitrators in Arbitration 2 according to the terms of their agreement."[2] Id.

---

[2] In the October 5, 2011 Memorandum and Order, we also declined IRB's request to consolidate Arbitrations 2 and 3 (or alternatively to stay the arbitrations such that a third panel could be appointed to decide the issue of consolidation), holding that the decision on consolidation would be left to the panel in Arbitration 2. See IRB-Brasil, 2011 WL 4686517, at *3-4. Finally, we denied NICO's request to have the Court appoint the umpire for Arbitration 3. See id. at *4.

4

Unfortunately, our faith that Arbitration 2 would proceed without issue proved misplaced. By letter dated October 11, 2011, IRB informed the party-appointed arbitrators in Arbitration 2 – James White for IRB and James Dowd for NICO – that NICO had effectively struck Rosen as an umpire candidate for Arbitration 2 (based on IRB's understanding of this Court's October 5, 2011 Memorandum and Order), and that IRB had struck Caleb Fowler as NICO's umpire nominee. (McCormack Decl., Ex. 4.) This left William Trutt (nominated by IRB) and Dan Schmidt (nominated by NICO) as the remaining candidates to be the umpire in Arbitration 2. (Id.) IRB's letter requested that White and Dowd draw lots to determine whether Trutt or Schmidt would serve as umpire. (Id.)

This plan was not to be. The same day that IRB sent this letter, counsel for NICO allegedly communicated to IRB that NICO would not permit the drawing of lots until IRB's umpire nominee – Trutt – completed a questionnaire concerning his history as an arbitrator and any conflicts he may have with the parties to the arbitration. (Id. ¶ 9.) Two days later, NICO's party-appointed arbitrator – Dowd - abruptly emailed counsel for both parties and stated that he was resigning from his position. (Id., Ex. 6.) It would later come to light that counsel for NICO had requested that Dowd submit this resignation. (Id., Ex. 9.) Just

minutes after Dowd submitted his resignation, NICO announced that it had appointed Rosen to serve as its party-appointed arbitrator in Arbitration 2 (thus making Rosen NICO's party-appointed arbitrator in both Arbitrations 2 and 3). (Id., Ex. 7.)

Against the backdrop of these recent events, the parties filed the instant petitions. IRB now asks the Court (1) to prohibit NICO from changing its party-appointed arbitrator in Arbitration 2 from Dowd to Rosen, or alternatively, to permit IRB to pick NICO's arbitrator in Arbitration 2; (2) to prohibit NICO from placing conditions on the drawing of lots in Arbitration 2 and to order the immediate drawing of lots in Arbitration 2; and (3) to stay Arbitration 3 pending the decision in Arbitration 2 on consolidation.

In its cross-petition, NICO asks the Court (1) to disqualify Trutt as an umpire candidate in Arbitration 2; or (2) in the alternative, to require that Trutt complete an umpire questionnaire.

**DISCUSSION**

## I.  Legal Standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "establishes a federal policy favoring arbitration requiring that we rigorously enforce agreements to arbitrate."

Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 226 (1987) (internal quotation marks and citation omitted). There are two provisions of the FAA that are relevant for purposes of the instant petitions.

Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Section 5 of the FAA requires that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." Id. § 5. Section 5 further provides that if the agreement does not specify a method for appointing an arbitrator, of if a party fails to follow the method that is specified for such an appointment, either party may make an application to the court, and "the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein." Id.

## II.   **Replacement of Dowd with Rosen**

IRB requests that this Court act pursuant to Section 5 of the FAA and order that Dowd, and not Rosen, serve as NICO's party-appointed arbitrator in Arbitration 2.[3] IRB contends that NICO's original selection of Dowd should be considered final, and that the arbitration agreement and the integrity of the system do not permit a "do over" of this step of the arbitration process. (Mem. of Law in Supp. of IRB-Brasil Resseguros S.A.'s Mot. to Compel Arbitration in Compliance with the Arbitration Agreement and for Further Relief at 8.)

The case law in this area is thin but nevertheless instructive. In Insurance Company of North America v. Public Service Mutual Insurance Co. ("INA"), 609 F.3d 122, 124 (2d Cir. 2010), a party-appointed arbitrator had resigned from his position and the party whose arbitrator had resigned demanded that an entirely new panel of arbitrators be convened. The Second Circuit rejected the notion that a new panel must be convened in such a situation[4] and instead upheld the district

---

[3] IRB alternatively requests that the Court treat NICO's having asked Dowd to resign as a failure to appoint an arbitrator within the time period required under the arbitration agreement, thus entitling IRB to fill the vacancy itself under the terms of the agreement.

[4] The INA court clarified that the rule articulated in Marine Products Export Corp. v. M.T. Globe Galaxy, 977 F.2d 66 (2d Cir. 1992) — "that, absent 'special circumstances,' if a vacancy arises on an arbitral panel due to the death of an arbitrator prior to the rendering of an award, a new panel should

8

court's decision to either reappoint the individual who had resigned as party-arbitrator, or to direct the relevant party to appoint a new candidate should the individual who had resigned refuse reappointment. See id. at 123-24.

While the Second Circuit has thus sanctioned court-reappointment of an arbitrator who has resigned, the facts underlying INA differ from those in the present matter in a crucial respect – the party whose arbitrator had resigned in INA had not nominated a replacement candidate. A recent case with far more analogous facts is Northwestern National Insurance Co. v. Insco, Ltd., No. 11 Civ. 1124 (SAS), 2011 WL 1833303 (S.D.N.Y. May 12, 2011). In Insco, a party-appointed arbitrator resigned after an ongoing dispute as to the composition of the panel halted the arbitration process. See id. at *1. The relevant party then appointed a replacement arbitrator. Id. at *2. Incredibly – or perhaps not – this replacement was Jonathan Rosen, the same individual who NICO has appointed as its replacement arbitrator in Arbitration 2. Id. at *2. The petitioner in Insco requested that the district court reject the appointment of Rosen and appoint a replacement of the court's choosing under Section 5 of the FAA. The court denied the petition, holding that the request to strike the replacement

be convened" – does not apply to circumstances when an arbitrator resigns from his position. INA, 609 F.3d at 123-24.

candidate was inconsistent with applicable precedent as well as with the underlying goal of arbitration, which is to provide for a balanced deliberation that produces an outcome that both parties are willing to accept. See id.

We concur with the general principles articulated in Insco. We note as an initial matter that IRB has not pointed to a single case in which a court has displaced a party's selection of a replacement arbitrator after that party's initial choice has resigned. See id. at *3. The lack of such precedent is understandable. It is commonly accepted that in the tripartite arbitration system, parties are entitled to an arbitrator of their choice to act as a de facto advocate for their position. See Feinberg v. Katz, No. 01 Civ. 2739 (CSH), 2003 WL 260571, at *4 (S.D.N.Y. Feb. 5, 2003) (citing Astoria Med. Grp. v. Health Ins. Plan of Greater N.Y., 11 N.Y.2d 128, 132–34 (1962)). To deny NICO the party-appointed arbitrator of its choice would therefore be to deprive it of a basic expectation in entering the arbitration agreement. The fact that the arbitration agreement is silent on a specific method for replacing arbitrators does not, by itself, vitiate NICO's entitlement to this right. See Insco, 2011 WL 1833303, at *3.

However, we are hesitant to ratify NICO's choice of Rosen as a replacement arbitrator given that NICO directly solicited

10

the resignation of its original selection. NICO asked Dowd to resign over two years after it appointed him and after the parties already had the benefit of the decision in Arbitration 1 as well as the result of this Court's October 5, 2011 Memorandum and Order. While the risk of manipulation is admittedly less in the instant scenario than when a party solicits the resignation of its arbitrator and then demands that an entirely new panel be convened, see id. at *3, we are nonetheless wary of creating an unfettered right to alter the composition of an arbitration panel. Such a right would enable parties to endlessly delay the arbitration process, thus undermining one of the central reasons that parties enter into arbitration agreements – to provide for a speedy resolution to their disputes. More generally, such a rule would inject an intolerable level of uncertainty into the arbitration system.

Despite our reservations, we decline to overrule NICO's actions for two reasons specific to the facts before us. First, although a significant amount of time has passed since NICO made its initial selection of Dowd, the panel for Arbitration 2 has yet to take any action because it has not been fully constituted. It would therefore not be particularly inefficient or otherwise prejudicial to substitute a new arbitrator at this stage of the proceedings. Second, we note that in its previous

11

petition to this Court, IRB sought to have Arbitrations 2 and 3 consolidated. Given that Rosen is NICO's party-appointed arbitrator in Arbitration 3, having him serve in the same position in Arbitration 2 would only seem to bolster IRB's case for consolidation.

For these reasons, along with the general principles articulated in Insco, we deny IRB's request to remove Rosen as NICO's party-appointed arbitrator in Arbitration 2.

## III. Disqualification of Trutt

In its cross-petition, NICO asks this Court to disqualify William Trutt as an umpire candidate in Arbitration 2. NICO contends that Trutt is not eligible to serve as an arbitrator under the terms of the agreement because he is "under the control" of IRB. To establish this claim, NICO points to the contents of an affidavit previously submitted by IRB's party-appointed arbitrator James White. In that affidavit, White states: "As part of the process of selecting a nominee for Umpire in [Arbitration 2], I spoke with Mr. William J. Trutt and with Mr. Jonathan Rosen and confirmed their interest, ability, and willingness to serve as IRB's Umpire candidates in [Arbitration 2]." (Docket no. 5 ¶ 5.) NICO contends that this communication constituted an improper ex parte communication with the umpire candidates, and that the reference to Trutt's

12

willingness "to serve as IRB's Umpire candidate[]" reveals that
Trutt has agreed to act as an agent for IRB in this matter.
(Mem. of Law in Opp'n to Order to Show Cause and in Supp. of
Cross-Pet. to Disqualify Neutral Umpire Candidate ("NICO Mem.")
at 11-15.) NICO points to various industry authorities to
demonstrate that such ex parte communications are disfavored as
a matter of industry practice. (NICO Mem. at 12-13.) In
response, IRB disputes that such communications are uncommon in
the type of "ad hoc arbitrations" at issue in this case. (IRB-
Brasil Resseguros S.A's Reply Mem. of Law in Further Supp. of
Its Am. Pet. to Compel Arbitration in Compliance with the
Arbitration Agreement and for Further Relief, and in Opp'n to
the Cross-Pet. ("IRB Reply Mem.") at 4.)[5]

Whether or not White's communication with Trutt violates
best industry practices is of no importance here.[6] As a matter of
law, this communication does not render Trutt "under the

---

[5] "Ad hoc arbitrations" refer to arbitrations that are not subject to the
rules of the AIDA Reinsurance and Insurance Arbitration Society (ARIAS-US).
IRB emphasizes that the arbitration agreements at issue do not employ an
ARIAS-US arbitration clause, and therefore the arbitrations are not governed
by ARIAS-US rules. (IRB Reply Mem. at 4.)

[6] We do note the irony that NICO would cite to the ARIAS-US Code of Conduct in
support of its position. (NICO Mem. at 13; Declaration of Michael A. Knoerzer
("Knoerzer Decl.") Ex. E.) While Canon V of the Code of Conduct may support
the notion that White's ex parte communication was improper under industry
standards, Canon IV of the Code of Conduct expressly disapproves of replacing
an arbitrator in the manner by which NICO replaced Dowd with Rosen. (See
Knoerzer Decl. Ex. D) (stating that if an arbitrator is requested to withdraw
by fewer than all of the parties, the arbitrator may do so only under limited
circumstances.) We find it curious that NICO would consider the parties bound
by certain canons of the ARIAS-US Code of Conduct but not others.

control" of IRB. NICO does not cite to any case law that would support a conclusion to the contrary, and the plain contents of the communication even expose the weakness of NICO's claim. White's affidavit states that he spoke not only with Trutt about "serv[ing] as IRB's Umpire candidate[]," but also with Rosen. Thus, under NICO's logic, Rosen - who is now NICO's party-appointed arbitrator in Arbitration 2 - should be considered "under the control" of IRB and thus ineligible to serve as an arbitrator. The absurdity of this outcome reflects not only the convoluted series of events that have transpired in this case, but also the obvious shortcomings in NICO's position.

We view NICO's effort to have Trutt disqualified under the terms of the arbitration agreement as a simple re-casting of the claim that NICO has made through the course of this litigation - that Trutt is biased in favor of IRB. It is well established in this Circuit that parties are precluded from attacking the partiality of an arbitration panel until after an award has been issued. Aviall, Inc. v. Ryder Sys. Inc., 110 F.3d 892, 895 (2d Cir. 1997) (citing Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 n.4 (2d Cir. 1980)); see also Nat'l Planning v. Achatz, No. 02-CV-0196E (SR), 2002 WL 31906336, at *3 (W.D.N.Y. Dec. 17, 2002). While NICO is free to challenge the "evident partiality" of the panel under Section 10(a)(2) of the FAA after

an award is rendered,[7] it may not challenge the partiality of the arbitrators at this stage of the proceedings. See Aviall, 110 F.3d at 897.

## IV.  Completion of Umpire Questionnaire

NICO requests that if Trutt is allowed to continue as an umpire candidate for Arbitration 2, he be required to submit an umpire questionnaire. Although no mention of questionnaires is made in the arbitration agreement, NICO claims that counsel for both parties verbally agreed in December 2009 that umpire candidates for Arbitration 2 would be required to complete questionnaires. (Knoerzer Decl. ¶ 13.) While IRB concedes that there was an agreement to have potential arbitrators fill out questionnaires, it claims that the agreement pertained only to a separate resolution process that the parties were exploring as part of their without-prejudice settlement discussions.

The only evidence presented by the parties from which we can assess these competing accounts is an email authored by counsel for IRB on December 23, 2009. (Docket no. 15, Ex. T.) The opening sentences of the email make clear that IRB considered the without-prejudice settlement process to have

---

[7] Section 10(a) of the FAA provides that a district court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2).

broken down, and that IRB desired to return to the framework of the arbitration agreements. Counsel for IRB then wrote:

> The next step in [Arbitration 2] is that . . . we need to send questionnaires to and strike from the list of umpires each side put up under the arbitration provision. Those potential umpires are:
>
> For NICO: Caleb Fowler; Dan Schmidt.
>
> For IRB: Jonathan Rosen; William Trutt.
>
> We already have Mr. Schmidt's questionnaire response. Please let us know when you are ready to proceed with the other questionnaires.

(Id.) This email clearly undercuts IRB's claim that any agreement concerning questionnaires pertained only to the settlement discussions, as IRB's counsel refers to the planned use of questionnaires in the context of Arbitration 2. Based on this evidence, we find that there was an agreement to modify the arbitration agreement and have umpire candidates for Arbitration 2 submit questionnaires.[8] We direct IRB to have William Trutt complete a questionnaire should he wish to continue as an umpire candidate.[9]

---

[8] Under New York law, which governs the arbitration agreement, an oral agreement to modify a contract can be enforceable if it is supported by consideration. See 28 GLEN BANKS, N.Y. PRAC., CONTRACT LAW § 8:20; see also Cohan v. Movtady, 751 F. Supp. 2d 436, 442 (E.D.N.Y. 2010). There was clearly consideration supporting the oral agreement here, as both parties' umpire candidates are required to submit questionnaires, and NICO's umpire candidate has in fact already submitted one.

[9] We note that we expect Trutt to be provided the same questionnaire that NICO's umpire candidate Dan Schmidt has already completed.

16

While we grant NICO's request in this respect, we add a word of caution in issuing the directive. We fully expect that after Trutt completes the umpire questionnaire, the parties will proceed with the drawing of lots as prescribed in the arbitration agreement. Any further pre-award challenge by NICO to Trutt's qualifications that reflects another effort to question his impartiality will be treated by this Court as not made in good faith.

**V.    Stay of Arbitration 3**

In our October 5, 2011 Memorandum and Order, we determined that the panel in Arbitration 2 is the appropriate entity to decide whether Arbitrations 2 and 3 should be consolidated. Given this decision, we grant IRB's request to stay Arbitration 3 until the panel in Arbitration 2 renders a decision on the issue of consolidation.

**CONCLUSION**

For the foregoing reasons, we grant IRB's petition to stay Arbitration 3 and NICO's cross-petition to require umpire candidates in Arbitration 2 to submit questionnaires. The remaining requests in both parties' petitions are denied.

**SO ORDERED.**

17

Dated:    New York, New York
           November 29, 2011

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to
the following:

**Petitioner's Counsel**
Michael P. Murphy, Esq.
Aidan M. McCormack, Esq.
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

**Respondent's Counsel**
Michael A. Knoerzer, Esq.
Douglas R. Maag, Esq.
Clyde & Co. US LLP
405 Lexington Avenue
New York, NY 10174

18